## JOSEPH MAYHEW *versus* GRAFTON NORTON.

The owner of land conveyed two parcels thereof bounding them *by the harbour of Edgartown*, it being agreed, that he should lay out a way between the two lots, leading towards the harbour, for the use of the town. It was *held*, that the flats in front of the lots passed by the deeds, although the description, both as regarded the quantity of land conveyed and the length of the lines, would have been satisfied by applying it to the upland alone.

The owner of the soil over which a town way passes, cannot maintain trespass against a person placing obstructions thereon.

TRESPASS *quare clausum*. The declaration contained three counts. The first was for entering upon a tract of beach or flats-ground, and building a wharf thereon. The third was for laying logs, stones and timbers upon a certain place called the head of the wharf.

The trial was before *Shaw*, C. J.

Prior to the year 1756, Matthew Mayhew owned a large tract of land bounded on the salt water constituting the harbour of Edgartown. The *locus* was a part of this land.

William Mayhew testified, that he was the heir of Matthew; and that all the lands of which Matthew died seised descended to him.

On August 20, 1833, William Mayhew executed a deed to the plaintiff, which was comprehensive enough in its terms to include the *locus*, if the grantor was then seised thereof.

On July 7, 1756, Matthew Mayhew conveyed to Jonathan Bunker one quarter of an acre of land, described in the deed as bounded southerly by the harbour, three rods wide, from the land of Finly, and continuing three rods wide from the harbour northerly, until it makes a quarter of an acre, with the privileges and appurtenances, also with a privilege in a way to be laid out by the grantor on the west, adjoining to the land granted. Under this deed the defendant claims.

On July 19, 1756, Matthew Mayhew conveyed to William Pease a parcel of land *lying by the harbour of Edgartown*, bounded, beginning at the northeasterly corner, one rod distant southwesterly from land he had then lately sold to Bunker, thence extending five rods southwesterly by *the harbour*, and so extending five rods in width northerly by an intended way one rod wide, which the grantor thereby promised to lay out for the

Mayhew
*v.*
Norton.

use of the town of Edgartown, and by land belonging to himself, until it should make up the full and just quantity of one quarter and two thirds of a quarter of an acre, together with a privilege in the abovementioned and promised way. It was admitted, that the way between the Bunker and Pease lots, was an open, public way, and that it had been used as such for sixty or seventy years.

It also appeared, that a road was laid out by Matthew May hew seventy-one or seventy-two years ago on the northerly side of the two lots ; that Bunker and Pease held their re spective lots up to the line of that road ; and that if the two lots extended from such road to the line of high-water mark only, or thereabouts, they would contain the quantities of land stated in the two deeds respectively.

It was agreed, that if it was to be considered as a ques tion of fact, it should be taken as if found by the jury, that the parties to these deeds, by the words *by the harbour*, intended the high-water mark.

The third count referred to a trespass supposed to have been committed on that part of the flats-ground which was in front of the way laid out between the Bunker and Pease lots.

The defendant contended, that as the place in question had been laid out and dedicated to the public as a highway, and used as such for seventy years, trespass *quare clausum* could not be maintained by the owner of the fee against the defendant, for entering upon the land, or for placing upon it materials which would only impede or obstruct it as a way ; and fur ther, that in point of fact, all the materials which he had placed upon it, served to improve it as a way.

If the Court should be of opinion, that the way in question was not a highway, or that, under the circumstances, trespass would lie, then the case was to go to the jury to find, wheth er the defendant did any act or placed any materials thereon, which did not operate as a benefit and improvement of it as a way for common use.

Judgment was to be entered on a nonsuit or a default, or a new trial was to be ordered, as the Court might direct.

*Oct.* 20th.     *J. Reed,* for the plaintiff, contended that the harbour came up to high-water mark, and that the flats therefore did not

pass by the deed. *Adams* v. *Frothingham*, 3 Mass. R. 352 ; *Storer* v. *Freeman*, 6 Mass. R. 435 ; *Leland* v. *Stone*, 10 Mass. R. 459 ; *Blundell* v. *Catterall*, 5 Barn. & Ad. 91.

*Warren* and *Beal*, for the defendant, to the point, that the flats passed by the deed, cited Webster's Dict. *verb. harbour; Doane* v. *Broad Street Association*, 6 Mass. R. 332 ; to the point, that trespass would not lie for placing obstructions on a town way or highway, *Adams* v. *Emerson*, 6 Pick. 57 ; *Iveson* v. *Moore*, 1 Salk. 16 ; *S. C. 1* Ld. Raym. 486.

PUTNAM J. delivered the opinion of the Court. It is admitted that if the deed of Matthew Mayhew to William Pease, dated July 19, 1756, conveyed the flats which lay adjoining to the upland, the title to the land described in the first count is in the defendant.

By the Colonial ordinance of 1641 the owner of the upland became entitled to hold the adjoining flats, to the low-water mark, not however exceeding one hundred rods.

Now it is contended for the plaintiff, that the grantor excluded the flats, by means of the very accurate description of the premises, as well in regard to quantity, as in regard to the length of lines.

It is the duty of the Court to adopt that construction, which will best effectuate the intent of the parties ; and monuments are more to be regarded than the courses and distances. If the deed had bounded the land southerly by the sea or salt water, and the description in all other respects had been the same as it is found in the instrument, there can be no question but that the flats would be included, to the low-water mark ; for if it were not so, when the tide had left the flats bare, the description of the boundary could not be satisfied without extending to the sea or salt water.

But the words employed in the deed under consideration are, that the premises bound " by the harbour of Edgartown." We think that phrase necessarily is as extensive as if the grantor had bounded by the sea, or salt water, or low-water mark. For the harbour includes not only the land covered by the sea below low-water mark, but also the land or flats where the tide ebbs and flows between high-water mark and low-water mark. And the whole of that land is used occasionally as a harbour for vessels and other maritime purposes.

*Mayhew*
*v.*
*Norton.*

*Oct.* **21st.**

If an insurance were upon a vessel in Plymouth harbour, for example, and she were burnt by lightning or otherwise after the tides had left her upon the flats, could it be contended that she was not in the harbour because she happened not to be afloat at the time of the accident ?   The same remark would apply, if she were hove down to be graved as near to the high-water mark as she could be floated.   Bounding by the harbour of Edgartown, we think, means by the sea or salt water.   If the tide should be out, still the line goes to the salt water, which makes the harbour.

It is true, that a man may sell his flats separately from his upland, or *vice versâ*, if he pleases.   The principles of the ordinance of 1641 have been extended and applied to the old colony of Plymouth, and form a part of the common law.   The propriety of the flats was annexed to the propriety in the upland.   And when the upland was alienated and bounded by the salt water, without any reservation, the flats passed as part and parcel.   And so here, the grantor conveyed by words equivalent to " bounding by the sea or low-water mark."

There is a circumstance which fortifies this presumption, arising from the grant of the way of one rod wide between the premises and the land granted to Bunker on July 7, 1756.   It was to be laid out for the use of the town of Edgartown.   The way was coextensive with the grants to Pease and to Bunker. If the premises were bounded by the shore or high-water mark, and the grantor had reserved his flats, it is very difficult for us to see what occasion the inhabitants of Edgartown could have had for a way of five rods in length between those two lots.   But it is most manifest that this was intended as a way to the harbour.   It was to enable the town to go and come to and from their vessels in the harbour.

The second count, for filling up and destroying the spring, is waived by consent.

The third count is for laying logs, &c. upon the way at the head of the wharf.

Now the proprietor of the soil laid out this way for the use of the inhabitants of Edgartown.   If it were obstructed, the remedy against the party making the nuisance would be by

ndictment, or a special action of the case for a particular injury. But this declaration is in trespass, which may be supported by the owner of the soil for taking away the grass or herbage, but will not lie for any incumbrance or nuisance erected. If however the stones, timbers, &c., were put upon the way with an intent to repair it, and they were appropriated accordingly and the way made better, it would be perfectly clear, that the owner of the soil, who had dedicated the *locus* to the town for a way, could not maintain any action for those acts.

*Plaintiff nonsuit.*